Selden, J. (Dissenting.)
To_ arrive at a just conclusion in this case, it is necessary to collate several statutory provisions and military regulations, and to ascertain their combined effect. The commánder-in-chief of the military forces of the State having been- authorized by the act passed April 17, 1854, to establish rules, regulations, forms, &c., for the use and government of those forces, and having, pursuant to this authority, prescribed a body of rules for that purpose, these rules are, by section 14 of the act of April 8,1858, made a part of the military laws of the State. Section 698 of these rules provides as follows: “ To be eligible to election or appointment to office in the military forces of the State, the person must be a white male citizen of the United States, of the age of eighteen years or upwards, and a resident of the proper military district, city or village, agreeably to law.”
*59 Were it not for the last words of this section, the inference from its provisions might be that it was designed to exclude from eligibility all persons not residing within the district in which the particular military corps in which the election occurs is located; in other words, to require that, to be eligible to a company office, they must reside within the limits of the company, or, to a regimental office, within the limits of the regiment, &c. But the words, “ agreeably to law,” imply the existence of other legal provisions on the subject, and refer the question of eligibility entirely to these provisions. It becomes necessary, therefore, to see what other statutory provisions there are, bearing upon the question.
Upon the 14th of April, 1855, an act was passed in relation to the first division and fifth brigade of the New York State militia. Section 65 of this act is in these words: “ Any officer, non-commissioned officer, musician, or uniformed private, who may change his residence, within the bounds of said division, into any adjacent county, or from within any county adjacent into the said division district, shall not thereby vacate his office or post, but he shall he held to duty in the division, brigade, regiment, troop or company to which he was attached at the time of such change of residence, and he shall he subject to duty therein, and shall be entitled to all privileges, immunities and exemptions allowed by law, and shall be liable to fines and penalties, and the collection of them, in the same manner as if such change of residence had not taken place; and process for the collection of such fines and penalties may be executed in either New York or any adjacent county.”
Section 693 of the military rules is made, by its terms, entirely subordinate to this statutory provision; and, as there does not appear to be any subsequent statute conflicting in this respect with the act of 1855, the whole question turns upon the interpretation to be given to section 65 of the latter act. By the construction put upon this section by the learned judge before whom the cause was tried, while an officer of a regiment in the city of New York, by removing from the city into an adjoining county, does not forfeit his office he,- nevertheless, *60 thereby renders himself ineligible to any other office in that regiment, or, unless the removal is to the county of Richmond, in the division to which such regiment belongs.
I find it somewhat difficult to reconcile this construction with the terms of the provision, or with what appears to have been its object. It secures, in express terms, to persons so removing, all the privileges which appertain to them as members of the corps to which they belong at the time of their removal. Eligibility to office is a privilege, and, among military men, is apt to be considered as not the least among the many privileges they enjoy. If military men in the city of Hew York, by removing into the suburbs of the city, within the limits of an adjoining county, thereby render themselves incapable of promotion, while, at the same time, they are compelled still to do duty in the city, they would be deprived of a privilege which, undoubtedly, many of them consider valuable.
One object of the provision in section 65, confined, as it is, to the first division of the militia of the State, seems to me to have been, to meet the exigencies of those who are engaged in business in the city of Hew York, but who, nevertheless, have' their residences without the bounds of the city, in some one of the adjoining counties. Whether the defendant in this case belongs to this class or not, is immaterial. The construction put upon the section would necessarily include them all.
The words, “shall not thereby vacate his office or post,” are not the only operative words of the section; nor is it to be inferred that they embrace its sole, or even its principal object. It provides that the person removing “ shall be held to duty” in the corps to which he belongs; and, again, that he “shall be subject to duty therein.” Its object, very plainly, was not merely to confer a favor upon officers by saving to them their offices. It applies to privates as well as officers, and compels all alike to continue to do duty in the corps to which they are attached; subjecting them to the same fines and penalties as if they had not removed. As, therefore, it imposes all the burdens existing before the removal, is it not fair to infer *61 that it intended to preserve all the corresponding privileges, especially when this is the import of its language?
If the statute operated upon officers alone, there would be more plausibility in saying that it was simply intended to prevent a forfeiture of their offices; although there would be very little propriety, even then, in compelling a man to serve in a subordinate office, and, at the same time, depriving him of all power of obtaining advancement. But there would be still greater injustice in obliging privates to continue to do duty in a corps in which they can have no hope of promotion. The design of the statute must, I think, have been, in part, to prevent changes in the ranks of the various military corps of the city, by removals from the city simply into the adjoining counties, or from those counties to the city, and to preserve to the individuals so removing their military status, whatever it may be, with its privileges as well as its duties alike undiroinished.-
It follows from these views that so much of the judgment of the Supreme Court as adjudges that the defendant Smith has usurped and unlawfully held and exercised the office in question, is erroneous and should he reversed.
Denio, J., concurred in this opinion; Mason, J., expressed no opinion.
Judgment affirmed.